FORD MOTOR COMPANY, Appellant,

v.

Malinda FORMAN; Hon. Richard M. Joiner, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2003–SC–0723–WC.

Supreme Court of Kentucky.

Aug. 26, 2004.

Wesley G. Gatlin, Boehl Stopher & Graves, Louisville, Counsel for Appellant.

Christopher P. Evensen, Tamara Todd Cotton & Assoc., Louisville, Counsel for Appellee.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) refused to enhance the claimant's income benefit under KRS 342.730(1)(c)1 despite evidence that physical restrictions prevented her from performing at certain work stations following her injury. The basis for the decision was evidence that a collective bargaining agreement grouped jobs at the employer's vehicle assembly plant into four classifications, and the claimant returned to work within the same classification. The Workers' Compensation Board (Board) reversed and remanded, however, on the ground that the ALJ applied an incorrect standard when making the decision. The Court of Appeals affirmed the Board. Likewise, we affirm.

The claimant alleged that she was disabled by three neck injuries that occurred in 1999 and required surgery. She returned to work in 2000 with restrictions against overhead work and against pushing, pulling, tugging, or lifting more than five pounds. After considering the medical evidence, the ALJ relied upon Dr. Guarnaschelli and determined that the claimant's AMA impairment was 18%. When multiplied by the corresponding statutory factor, the impairment yielded a disability rating of 27% for the purpose of calculating the claimant's income benefit under KRS 342.730(1)(b).

The claimant testified that she was a member of the auto workers' union at the plant and that the union had an agreement with the employer. Under the agreement, she was an assembler, a classification that included a number of different jobs pertaining to the assembly of trucks. She testified that she returned to work that was within the same classification as before the injury, but she could no longer perform many of the jobs that she used to do.

Donald Anderson, the employer's labor relations representative, testified that the local wage agreement between the company and the auto workers' union grouped the various jobs that were performed at the plant into four classifications.

Anderson explained that the claimant was classified as a "vehicle assembly technician" both before and after her injury. The classification includes virtually any job that pertains to assembling the parts of a vehicle, although different jobs within the classification have different physical requirements. For that reason, an individual with restrictions against a particular type of work could remain within the classification but be precluded from some of the jobs within it. He stated that all jobs within the same classification pay the same rate. A copy of the agreement that was appended to his testimony also indicated that assemblers worked in teams. The hourly rate within the classification varied, based upon the individual's ability to perform a stated portion of the team's operations.

From December 12, 1996, until July 14, 2000, KRS 342.730(1)(c)1 permitted an income benefit of 1½ times the basic benefit if the injured worker no longer retained "the physical capacity to return to the type of work that the employee performed at the time of injury." KRS 342.730(1)(c)2 required the benefit to be reduced by one-half (1/2) during weeks that the worker earned a weekly wage that equaled or exceeded the average weekly wage at the time of injury.[1] This Court has not been called upon to determine whether the 1996 provisions may be applied concurrently, but the Board has taken the view that they may.[2]

Based upon the claimant's return to work at the same or greater wage, the ALJ reduced her income benefit by 1/2 under KRS 342.730(1)(c)2. Despite the claimant's testimony that she could no longer perform many of her previous jobs within the vehicle assembly classification, the ALJ refused to enhance her income benefit under KRS 342.730(1)(c)1, explaining as follows:

Before her injury, Ms. Forman was performing work as an assembler in a Ford Motor Co. assembly plant. The types of work at this assembly plant are classified by a union-management agreement. Ms. Forman continues to work as an assembler at the same … plant. There are multiple stations where she can work as an assembler. With the restrictions claimed by Ms. Forman, she would be unable to work at certain of those stations. Even accepting that, I still find that she has the physical capacity to perform the type of work that she performed at the time of her injury. *This is based principally upon the determination, in accordance with the union-management agreement, that her work is classified as an assembler before the injury and is classified as an assembler after the injury. Where the types of work are defined as a result of the collective bargaining agreement, I think it appropriate for an administrative law judge to defer to that agreement in determining the type of work for purposes of enhancement of benefits.* (emphasis added).

Although the claimant petitioned for reconsideration with respect to the enhance-

---

**1.** As amended effective July 14, 2000, the provisions for permanent partial disability operate differently. KRS 342.730(1)(b) provides a basic benefit that is smaller than under the 1996 version. Subsection (c)1 enhances it by a multiple of 3; whereas, subsection (c)2 provides only the basic benefit unless employment at the same or greater wage ceases.

**2.** The 2000 versions of the provisions, which are separated by the word "or," may not. *Fawbush v. Gwinn*, Ky., 103 S.W.3d 5 (2003). Therefore, the ALJ must determine whether it is likely that the injured worker will be able to continue earning a wage that equals or exceeds the average weekly wage at injury and to apply whichever provision is more appropriate on the facts. *Id.*

ment of her benefit, the petition was denied. The ALJ explained as follows:

> The facts are quite clear. Many activities are performed by persons classified as assemblers. The type of work performed by an individual is defined by their classification under the union management agreement. Ms. Forman's limitations are such that she cannot perform all of the tasks performed by persons classified as assemblers. However, she can perform a sufficient number of the tasks to allow her to function in the classification of assembler. *Where the parties have set forth types of work by way of agreement prior to the injury, it is appropriate to defer to that agreement. Because the agreement sets forth types of work and because Ms. Forman is now returned to the same classification under that agreement. I have determined that she has the capacity to perform the same type of work she performed prior to the injury.* (emphasis added).

The Board determined that the ALJ erred by using the job classifications contained in the collective bargaining agreement as the standard for refusing to enhance the claimant's benefit. Reversing and remanding for further consideration, the Board explained that the correct standard under KRS 342.730(1)(c)1 was whether the claimant lacked the physical capacity to return to the same type of work that she performed at the time of injury. Therefore, her return to the same job classification might or might not be relevant. The Board directed the ALJ to analyze the evidence concerning the actual jobs the claimant performed at the time of her injury and those she could perform after returning to work. The Court of Appeals affirmed, and this appeal by the employer followed.

The employer asserts that the ALJ's decision was not based solely upon the collective bargaining agreement; that it was supported by substantial evidence of both the claimant's physical restrictions and the type of work she could perform; and that it should not have been disturbed on appeal. *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Furthermore, the employer argues, the ALJ did not use the collective bargaining agreement as the standard for applying KRS 342.730(1)(c)1 but as competent evidence of the type of work the claimant was able to perform both before and after her injury. Therefore, the agreement was relevant to the application of KRS 342.730(1)(c)1 and was properly considered by the ALJ. Finally, the employer argues that the Board and the Court of Appeals erred by construing "the type of work that the [claimant] performed at the time of injury" as referring to the specific jobs she performed rather than to the general kind of work, *i.e.,* vehicle assembly.

■ Although a worker's post-injury physical capacity and ability to perform the same type of work as at the time of injury are matters of fact to be determined by the ALJ, the standard to be used when making those findings is a question of law. Contrary to the employer's assertion, it is clear that the ALJ deferred to the classifications set forth in the collective bargaining agreement when determining the type of work that the claimant performed at both points in time. The ALJ concluded that because the claimant was able return to the same job classification, she was able to return to the same type of work as before her injury. In other words, the ALJ equated the claimant's collectively bargained job classification and "type of work."

KRS 342.277(1)(a)-(f) permit certain provisions in a collective bargaining agree-

ment to be valid and binding with respect to workers' compensation claims, including an alternative dispute resolution system and a light duty, modified job or return-to-work program. KRS 342.277(3) provides, however, that no agreement that diminishes the rights of a party shall be recognized as valid and binding. KRS 342.277(1) does not include a system of job classifications but, even if it did, such classifications would not be binding if they served to diminish a worker's rights under KRS 342.730(1)(c)1.

■ As we noted in *Ira A. Watson Department Store v. Hamilton*, Ky., 34 S.W.3d 48 (2000), the 1996 amendments base partial disability awards on impairment ratings assigned under the AMA *Guides*, which are a standardized method of assessing functional impairment. The factors employed in the 1996 version of KRS 342.730(1)(b) weight the calculation of partial disability benefits to favor more severely impaired workers, *i.e.*, those who are likely to be more occupationally disabled than workers with lesser impairments. *See Adkins v. R & S Body Co.*, Ky., 58 S.W.3d 428 (2001). Furthermore, both the 1996 and 2000 versions of KRS 342.730(1)(c)1 provide an enhanced benefit for those who lack the physical capacity to return to the type of work performed at the time of injury. When used in the context of an award that is based upon an objectively determined functional impairment, "the type of work that the employee performed at the time of injury" was most likely intended by the legislature to refer to the actual jobs that the individual performed.

■ Mr. Anderson's testimony indicated that each classification contained in the collective bargaining agreement includes many different jobs, with different physical requirements. The vehicle assembly technician classification includes all of the jobs that are involved in assembling a vehicle. For that reason, proof of the claimant's present ability to perform some jobs within the classification does not necessarily indicate that she retains the physical capacity to perform the same type of work that she performed at the time of injury. On remand, the ALJ must analyze the evidence to determine what job(s) the claimant performed at the time of injury and to determine from the lay and medical evidence whether she retains the physical capacity to return to those jobs.

The decision of the Court of Appeals is affirmed.

All concur.