# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: OCTOBER 23, 2014
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## FINAL

2013-SC-000772-WC

DATE 12-11-14 ЄшА Сrou·н, D.C

FORD MOTOR COMPANY                                 APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2013-CA-000160-WC
WORKERS' COMPENSATION NO. 10-88863

JEFFREY GRANT;
HONORABLE EDWARD D. HAYS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                       APPELLEES

## MEMORANDUM OPINION OF THE COURT

### REVERSING AND REMANDING

Appellant, Ford Motor Company, appeals from a Court of Appeals decision which upheld the award of permanent partial disability benefits to Appellee, Jeffrey Grant, enhanced by the three multiplier. Ford argues that the Administrative Law Judge ("ALJ") erred by applying the three multiplier to Grant's award because he returned to the same job he was performing at the time of his injury and earns the same or greater wages. Specifically, Ford argues that: 1) since Grant has returned to work at the same job he was performing at the time of his injury, and continues to earn the same or greater wages, the finding that he does not retain the physical capacity to continue that same type of work is an error as a matter of law; 2) the case of *Ford Motor*

*Company v. Forman*, 142 S.W.3d 141 (Ky. 2004), is distinguishable from this matter; and 3) the ALJ improperly shifted the burden of proof to the employer while performing a *Fawbush v. Gwinn*, 103 S.W.3d 5 (Ky. 2003), analysis. For the reasons set forth below, we reverse the Court of Appeals and remand this matter to the ALJ for further proceedings.

Grant was employed by Ford when he suffered a work-related injury to his right shoulder while lifting a transfer case. At the time he was injured, Grant worked on the transfer case line where he rotated between three different tasks – the "hoist" job, the "install" job, and the "tightening" job. Grant was performing the "hoist" job when he was injured. As a result of his injury, Grant was diagnosed with a right rotator cuff tear and bicep tendon tear. Grant has undergone two surgeries to repair the damage, but these have had limited success. Grant is now limited to lifting only five pounds with his right arm and cannot perform any work above shoulder level.

Grant returned to work at Ford, but now only performs the "hoist" job. While Grant was off work, the "hoist" job was ergonomically modified so that the position does not require any above shoulder work. Grant earns the same or greater wages than he did at the time of his injury. Ford's Labor Relations Specialist, Lonnie Corkum, testified as a part of this matter that there was no reason to believe that Grant's job position would be eliminated any time in the foreseeable future. Additionally, Corkum stated that since Grant has seventeen years of seniority at the plant, he would have plenty of opportunities to obtain a different job with Ford if necessary. However, in his deposition

2

Grant expressed concern that he would not be able to find another job at Ford if the "hoist" job was eliminated.

The ALJ, after a review of the record, awarded Grant permanent partial disability benefits based on a 10% impairment rating. In deciding that Grant was entitled to have the three multiplier applied to his award the ALJ wrote:

> Awards for permanent partial disability benefits are governed by KRS 342.730. Subsections (1)(c)1 and (1)(c)2 provide for enhancement of the basic award as follows:
>
>> KRS 342.730(1)(c)1: If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of the injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or
>>
>> KRS 342.730(1)(c)2: If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.
>
> What is meant by the 'type of work' indicated in (1)(c)1? When trying to determine whether the 3x multiplier in KRS 342.730(1)(c)1 applies, the ALJ is required to considered [sic] whether the claimant retains the physical capacity to return to the type of work that the employee performed at the time of the injury. In *Ford Motor Co. v. Forman*, Ky., 142 S.W.3d 141 (2003) [sic], the Kentucky Supreme Court clarified that for purposes of 342.730(1)(c)1, the 'type of work' referred to means [sic] the 'actual

3

jobs' performed by the claimant and is not determined by whether the return to work is within the same job classification.

At the hearing of this claim, Mr. Grant explained his work activities prior to the injury, as well as his work activities following the work injury. Prior to the injury, he was rotating between three different positions in the performance of the 'hoist' job. In order to reduce the physical wear and tear of performing the 'hoist' job, the plaintiff had, prior to his injury, rotated with two other co-employees. This job required him to move 120-pound transmission cases and install them on the back of transmissions. He worked on an assembly line which required him to repetitively lift significant weight with both hands and to work above shoulder level. There were actually three different jobs involved in the position and he and his co-employees rotated between the three jobs. The injury occurred on March 12, 2010 when the plaintiff was picking up a transfer case with the use of the hoist. He heard a popping and felt a ripping in his right shoulder. Although the actual lifting was being done by a hoist, and plaintiff had simply bent over to hook it and hit a lever which raised it up, while so doing, his shoulder popped.

Subsequent to the work-related injury and the two surgical procedures, the claimant has returned to the same job position or title, but the actual job or jobs which he has performed subsequent to the injury are dramatically different. The claimant is restricted from lifting more than 5 pounds with his right arm and he is restricted from working above shoulder level.

Subsequent to the surgeries, the plaintiff is doing one part of the three-part job all of the time. He is able to do this because the employer has lowered the pedestals on the conveyor and has modified the job, thereby enabling him to perform it. The Defendant has argued that plaintiff has returned to the same job for which he was being paid. In essence, however, he is performing only one of the three roles in the job. He is paid according to 'classification' of the job. He is working within a classification of 'vehicle assembly technician' and is being paid based on that classification, not on the particular job which is he doing. Mr. Corkum testified that Mr. Grant is not precluded by his injury from returning to his classification, of which his job is only one of many jobs that he was hired to do. Thus, the defendant argues that plaintiff is capable of performing his job. However, in *Ford Motor Co. v. Forman*, 142 S.W.3d 141 (Ky. 2003) [sic], the Kentucky Supreme Court held that 'the type of work that the employee performed at the time of injury' refers to the actual jobs that the employee performed as that phrase is used in workers' compensation statute providing an enhanced permanent partial disability benefit for those who lack the physical capacity to return

4

to the type of work performed at the time of injury. The Supreme Court went on to hold that since each classification contained in a collective bargaining agreement included many different jobs, with different physical requirements, proof of the claimant's present ability to perform some jobs within the classification did not necessarily indicate that the claimant retains the physical capacity to perform the same type of work that he or she was performing at the time of the injury with respect to the statute providing for enhanced benefits. Thus, considering this application of the law, the strict post-injury work restrictions imposed upon Mr. Grant, and the fact that he has only been able to perform his present job due to the modifications which the employer has made, the ALJ finds that claimant does not retain the physical capacity to return to the type of work or the type of jobs that he was performing at the time of injury.

In the case at hand, it is stipulated that Mr. Grant has returned to work at a weekly wage equal to or greater than the average weekly wage at the time of his injury. Thus, in the event of a cessation of work due to a reason related to the claimant's disabling injury [see *Chrysalis House, Inc. v. Tackett,* Ky., 283 S.W.3d 671 (2009)], Mr. Grant would be entitled to the 2x multiplier provided for in KRS 342.730(1)(c)2.

Having determined that both sections 1 and 2 are applicable, the ALJ must next determine which of the multipliers is the most appropriate under the facts of the case. *Fawbush v. Gwinn,* 103 S.W.3d 5 (2003). The ALJ must determine if the claimant is likely to be able to continue earning the same or greater wage for the foreseeable future. If the ALJ determines that it is unlikely the claimant will be able to continue earning the same or greater wage for the foreseeable future, then the 3x multiplier is applicable.

In performing this analysis, the ALJ will consider various factors, including, but not necessarily limited to, whether the claimant's current job is within his medical restrictions, whether he is on medications and the level of such medications, his own testimony as to his ability to perform the job duties, the level of accommodation provided by the current employer, and whether or not the claimant's current position is a bona fide job or not. The claimant is just 47 years of age and presumably has a long work life in front of him. He is performing a job which is nearly a 'one-armed job'. He can lift no more than 5 pounds with his right arm. He cannot work above shoulder level with his right arm. But for the accommodation of lowering the pedestals which his employer has made and but for his being permitted to stay on the same job and not rotate among the three different roles of the job, he would be unable to perform the job and he would not be earning his current wage. In fact, it is doubtful that he could be earning any

5

significant wage at all. Although the employer's attitude toward Mr. Grant has been commendable and the willingness of Ford Motor Company to alter the work station and to provide the accommodations which it has provided is praiseworthy, Mr. Grant finds himself at the mercy of the employer. If Mr. Grant should lose this job for any reason whatsoever, it is unlikely that he would be able to obtain any other employment which would compensate him within the same level or range. The ALJ must look to the likelihood of whether or not this current job will extend into the indefinite future. Although Mr. Corkum has nearly 'guaranteed' a job for the claimant, there are many factors of which Mr. Corkum has no control. If the general public's enthusiasm for the Ford product should diminish, then where does that leave Mr. Grant? Even though the general policy of Ford Motor Company has been to retain tenured employees and to make reasonable accommodations for such employees, there is no contractual duty for Ford Motor Company to do so and no guarantees of the continuation of such policy. Management may change, as well as company policy. The claimant has sustained an extremely serious injury which has required two major surgeries. Neither surgery was much of a success. As a result thereof, he has been relegated to the role of a job requiring essentially one arm only. He cannot work above shoulder level. He has been fortunate to be the recipient of Ford Motor Company's generosity, but he has no guarantee of knowing how long that will continue. If he should be transferred to another position in the plant, it is unlikely he would be able to do it. Plaintiff estimates he could only perform 2-3% of the jobs within the plant.

Considering all of the factors stated above, the ALJ finds that claimant is entitled to the 3x multiplier.

Ford appealed the ALJ's decision to the Workers' Compensation Board which affirmed in a two to one decision. The majority held that while there was evidence which contradicted the ALJ's decision, it was supported by substantial evidence and therefore should be affirmed. However, the dissenter believed that the ALJ misapplied *Fawbush.* In his analysis, the ALJ focused on whether Grant would find other suitable employment if he lost his job and ultimately concluded that his job at Ford might be affected by speculative factors. The dissenter believed that the focus should have been whether

Grant's employment at same or greater wages will continue into the foreseeable future. The Court of Appeals affirmed, with Judge Moore concurring in result only without opinion. This appeal followed.

## I. THE RECORD SUPPORTS THE FINDING THAT GRANT DOES NOT RETAIN THE PHYSICAL CAPACITY TO PERFORM THE JOB HE WAS PERFORMING WHEN INJURED

Ford first argues that the ALJ erred by finding Grant does not retain the physical capacity to continue the same type of work because he has returned to the job he was performing at the time of his injury. To properly address this argument, we must first address Ford's second argument, whether this matter is distinguishable from *Forman*, 142 S.W.3d 142.

In *Forman*, the claimant suffered a work-related injury but, upon returning to her employer, was placed in the same job classification she held at the time of her accident and earned an equal or greater wage. She did however have several physical restrictions which prevented her from performing all of the job tasks she did before her injury. The ALJ found that the claimant was not entitled to the three multiplier because she returned to the same job classification. *Id.* at 143. The Board reversed holding that the ALJ's reliance on the job classification was error. The Court of Appeals and this Court affirmed. In affirming, we stated that when dealing with an award that is based upon an objectively determined functional impairment, "'the type of work that the employee performed at the time of injury' was most likely intended by the legislature to refer to the actual jobs that the individual performed." *Id.* at 145. Thus, "proof of the claimant's present ability to perform some jobs within

7

the classification does not necessarily indicate that she retains the physical capacity to perform the same type of work that she performed at the time of injury. On remand the ALJ must analyze the evidence to determine what job(s) the claimant performed at the time of injury and to determine from the lay and medical evidence whether she retains the physical capacity to return to those jobs." *Id.*

*Forman* is analogous to this matter. Like the claimant in *Forman*, Grant has physical restrictions but has returned to work within the same job classification he was in before suffering his work-related injuries. Accordingly, the question is whether Grant retains the physical capacity to perform the same type of work within that classification now, as he did prior to his accident. The ALJ found that Grant does not have the capacity to perform all of the same tasks. He based this finding on: the fact that Grant only performs one of the three jobs he did at the time of his injury and the fact that Grant can only perform the "hoist" job because Ford lowered the pedestals eliminating the need for him to work above his shoulder level. These facts are supported by the record, and are sufficient grounds for the ALJ to have held that Grant does not retain the physical capacity to continue the same type of work he was performing at the time of his injury.

## II. THE ALJ'S *FAWBUSH* ANALYSIS MISPLACED THE BURDEN OF PROOF ON TO FORD

Ford's last argument is that the ALJ misapplied *Fawbush*. *Fawbush* provides that if both the multiplier provided in KRS 342.730(1)(c)1 and

342.730(1)(c)2 are applicable to a claimant's award, then the ALJ has the discretion to choose which of the multipliers to apply. *Fawbush*, 103 S.W.3d at 12. "If the evidence indicates that a worker is unlikely to be able to continue earning a wage that equals or exceeds the wage at the time of injury for the indefinite future, the application of paragraph (c)1 is appropriate." *Id.*

The ALJ found that he needed to perform a *Fawbush* analysis because Grant did not maintain the physical capacity to perform the job he was performing when injured ((c)1) and that he was earning equal to or greater wages now than at the time of his injury ((c)2). We agree with the ALJ that a *Fawbush* analysis was appropriate.

The ALJ then found the three multiplier was the better multiplier to apply because he believed Grant would not be able to earn equal or greater wages for the indefinite future. In so holding, the ALJ noted that although Ford stated it would continue to employ Grant in some capacity, there were many factors which could affect his employment that Ford had no control over. In particular, the ALJ worried that the public may stop purchasing Ford vehicles leading to the closure of the factory, that there is no contractual duty for Ford to continue to employ Grant, that management changes may occur which could lead to a more difficult work environment for Grant, and that he does not have the physical capacity to perform similar jobs which might pay comparable wages. Ford argues that this analysis effectively forced it to present evidence that Grant was guaranteed the same job for the rest of his career, something that no employer can do. We agree.

While Grant does have physical limitations in regard to the type of work he can perform, the ALJ's analysis of whether he can earn the same or greater wage for the foreseeable future is speculative. The ALJ's analysis is based on events which may never occur. In contrast, the holding in *Fawbush* that the claimant was not likely to be able to earn a comparable wage for the foreseeable future was based on concrete evidence – that the only way he could perform his job was to work outside of his medical restrictions and take more narcotic pain medication than he was prescribed. *Id.* at 12. There is no similar evidence that Grant's current job is outside of his medical restrictions. Therefore, we reverse the determination that Grant was entitled to have his award enhanced by the three multiplier, and remand this matter for the ALJ to reconsider his findings. We note that on remand the ALJ is free to still decide the three multiplier is appropriate as long as it is supported by the record.

For the above stated reasons, we reverse the Court of Appeals and remand this matter to the Administrative Law Judge for further proceedings.

All sitting. Minton, C.J.; Abramson, Cunningham, Noble, Scott, and Venters, JJ., concur. Keller, J., concurs in result only.

10

COUNSEL FOR APPELLANT,
FORD MOTOR COMPANY:

Peter J. Glauber
Philip J. Reverman, Jr.
Elizabeth M. Hahn

COUNSEL FOR APPELLEE,
JEFFREY GRANT:

James Delano Howes