# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2015-SC-000120-WC

SONYA LAMB MIDDLETON                                APPELLANT

V.
           ON APPEAL FROM COURT OF APPEALS
                CASE NO. 2014-CA-001136-WC
         WORKERS' COMPENSATION NO. 12-88059

LOWE'S HOME CENTERS, INC.;
HONORABLE WILLIAM J. RUDLOFF,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                       APPELLEES

## **MEMORANDUM OPINION OF THE COURT**

### **AFFIRMING**

Appellant, Sonya Lamb Middleton, appeals a Court of Appeals decision which reversed a Workers' Compensation Board ("Board") opinion affirming her award enhanced by the three multiplier. KRS 342.730(1)(c)1. The Court of Appeals held that application of the triple multiplier was unsupported by the record and based upon a hypothetical situation. Middleton disagrees, and argues that application of the three multiplier was supported by the record because she does not retain the physical capacity to return to the type of work she performed at the time of her work-related injury. For the below stated reasons, we affirm.

Middleton has been employed by Lowe's as a "project specialist for exteriors" for over twelve years. She suffered a work-related injury consisting of a ruptured disc at the C6-C7 level in 2012. Middleton underwent an anterior cervical discectomy and fusion which provided her with some pain relief. However, she still experiences pain that radiates into her cervical region, mid to upper back and neck area, and both shoulders.

Middleton's Form 101 describes the physical requirements of her job as "[l]ifting; mainly taking samples out of my vehicle and carrying them into customers [sic] homes; traveling back & forth from Lowe's to customers [sic] homes; paperwork/sales order." After the work-related injury and the surgeries, Middleton returned to her employment with Lowe's. She is able to perform all of the physical tasks associated with her job, but claims it is difficult for her. Middleton alleges that when she pushes or pulls a cart, which she uses to take materials to customers, pain radiates down her left arm. She also alleges that she experiences a burning feeling in her neck and numbness on the first and second fingers on her left hand. Her current medications include Ibuprofen, Levothyroxine, Flexeril, and Imitrex. Dr. James Owen, Middleton's medical expert, recommended that she "avoid activities such as extending her arm posteriorly and pulling" because it seemed to exacerbate her neck pain and cause radiating pain.

Dr. Owen and Lowe's medical expert, Dr. Bart Goldman, both assigned her a 27% permanent whole person impairment to the body as a whole based on the AMA *Guides to the Evaluation of Permanent Impairment*, Fifth Edition.

The ALJ assigned Middleton that impairment rating and then turned to the application of the multipliers per KRS 342.730(1)(c). That statute states in pertinent part:

> 1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or
> 2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection.

The ALJ made the following findings regarding Middleton's eligibility for the multipliers:

> I saw and heard [Middleton] testify at the Final Hearing and make the factual determination that she is clearly a well-motivated worker and her sworn testimony was very credible and convincing.
> . . .
> In this case, I am required to make an analysis under *Fawbush v. Gwinn*, 103 S.W.3d 5 (Ky. 2003). Based upon [Middleton's] sworn testimony and the medical evidence from Dr. Owen, which is summarized above, I make the factual determination that [Middleton] cannot return to the type of work which she performed at the time of her work injuries in accordance to KRS 342.730(1)(c)1. I base that factual determination on [Middleton's] diagnosis being status post C6-7 anterior cervical discectomy and decompression with microsurgical technique and insertion of anterior interbody Synthes cage, arthrodesis local harvested allograft, anterior instrumentation with Synthes plate and screws with persistent neck pain, her 27% permanent impairment rating, her statement that she has daily pain at her job consisting of aching and stabbing and burning pain from the base of her neck radiating up the back of her head posteriorly, muscle

3

spasms between her shoulder blades with burning and pins and needles radiating down her left upper extremity, and pins and needles and numbness into her left long and index fingers, and also the fact that she takes on a daily basis pain medications, consisting of Ibuprofen, Levothyroxine, Flexeril, and Imitrex. She testified at the Final Hearing that she has a limited range of motion in her neck and that her job is getting progressively more difficult and painful. Again, I found her testimony to be very credible and convincing. In addition, I make the factual determination that [Middleton] has returned to work for [Lowe's] earning the same or greater average weekly wage than she earned at the time of her work injuries per KRS 342.730(1)(c)2. I make the factual determination that potentially both the 2 and the 3 multipliers could apply in this case and I must determine which is appropriate. I also have to make the determination whether [Middleton] is unlikely or likely to be able to continue earning the wage that equals or exceeds her wage at the time of her work injuries for the indefinite future. Based upon [Middleton's] sworn testimony and the persuasive and compelling medical report from Dr. Owen, I make the further factual determination that under the decision of the Court of Appeals of Kentucky in *Adkins v. Pike County Board of Education*, 141 S.W.3d 387 (Ky. App. 2004), the *Fawbush* analysis includes a broad range of factors, only one of which is [Middleton's] ability to perform, her current job. Under the Adkins case, the standard for the decision is whether [Middleton's] injuries have permanently altered her ability to earn an income and whether the application of KRS 342.730(1)(c)1 is appropriate. I make the factual determination under [Middleton's] sworn testimony and the medical report from Dr. Owen that it is unlikely that [Middleton] will be able to continue for the indefinite future to do work from which to earn such a wage. Based upon all of the above-cited evidence, which is summarized above, I make the factual determination that the third prong of the *Fawbush* analysis applies here and that [Middleton's] injuries have permanently altered her ability to earn an income, that she is unlikely to be able to continue for the indefinite future to do work from which to earn such a wage. I, therefore, make the factual determination that the third prong of the *Fawbush* analysis applies here and that under the application [Middleton] is entitled to the 3 multiplier under KRS 342.730(1)(c)1.

The ALJ made further findings of fact in an opinion and order on reconsideration:

4

[Lowe's] argues that [Middleton] is not entitled to an award of enhanced permanent partial disability benefits and that the Administrative Law Judge erred in so deciding.

[Middleton] testified that after her neck surgery she returned to work for Lowe's. She testified in detail about the physical requirements of her current job. She stated that since returning to work her job has been very physically demanding. She has a limited range of motion in her neck and has difficulty climbing into attics, stooping down and crawling. She also has difficulty moving items weighing 25-30 pounds in and out of her vehicle. She stated that her ability to physically perform her job has become progressively more difficult because of having to lift, pull, and extend and because of the limitations in her neck and left arm. Those physical activities have become more painful for her. She testified that she has extreme sharp shooting pains that go into the back of her skull and pain down her left arm. After driving, she has a burning sensation going down into her hands and fingers. She has numbness in the fingers of her left hand. She has been attempting to modify her job. She has changed her schedule. At the end of her work day she goes home and takes pain medication and then rests on the couch with a heating pad or ice pad. She takes Motrin, Tylenol, and Flexeril to relieve muscle spasms between her shoulder blades. Due to her painful symptoms, she has difficulty sleeping at night. She has to take another Flexeril in the middle of the night for relief. She stated that taking Flexeril makes her sleepy. She stated that since her deposition the physical condition of her neck has gotten worse and the pain has gotten more frequent, causing her to take more pain medication. She testified that she did not think that she would be able to keep up her present pace on the job into the foreseeable future, which will result in her having to take a huge pay cut.

. . .

In *Hush v. Abrams*, 584 S.W.2d 48 (Ky. 1979), the Kentucky Supreme Court stated that where the medical evidence clearly and unequivocally shows the plaintiff's actual bodily condition, [the plaintiff's] lay testimony is competent on the question of the extent of disability which as resulted from his bodily condition, and that where there is medical testimony from which the decision maker could conclude that the plaintiff did suffer trauma, the decision maker could then use lay testimony to determine the extent of the plaintiff's occupational disability.

. . .

Taking all of the above-cited evidence into consideration, I make the factual determination that the third prong of the *Fawbush* analysis applies here and that under that application [Middleton] is entitled to the 3 multiplier under KRS

5

342.730(1)(c)1. In making that determination, I also relied upon the opinion of the Kentucky Supreme Court in *Adams v. NHC Healthcare*, 199 S.W.3d 163, 168-69 (Ky. 2006), where the high court stated that the standard for decision is whether the injury has permanently altered the workers' ability to earn an income and that the application of KRS 342.730(1)(c)1 is appropriate if the plaintiff returns to work at the same or greater wage, but is unlikely to be able to continue for the indefinite future to do work from which to earn such a wage.

The Board affirmed the ALJ's findings and Lowe's appealed to the Court of Appeals. The Court of Appeals reversed the Board holding that applying the three multiplier to Middleton's award was unwarranted. The Court of Appeals held that a *Fawbush* analysis should not have been conducted because there was no testimony of record that Middleton currently lacks the physical capacity to perform the full range of her employment duties. The court noted that while Middleton indicated she would like some accommodations to make her job easier, she had not asked Lowe's to implement them. The Court of Appeals also cited to the fact that Middleton only feared she might need to increase the medicines she takes to continue performing her job, but had not requested or been prescribed those drugs. The Court of Appeals concluded:

> In short, Middleton was granted the three times multiplier based upon a hypothetical situation that accommodations (when she decides to ask for them) and a prescription for pain relief medication (when she obtains one from a physician) might entirely prevent. This, in turn, is speculation and does not support an enhancement pursuant to KRS 342.730(1)(c)1.

Middleton appealed the reversal of the application to this Court.

The Board's review in this matter was limited to determining whether the evidence is sufficient to support the ALJ's findings, or if the evidence compels a different result. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992).

6

Further, the function of the Court of Appeals is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* The ALJ, as fact-finder, has the sole discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky. 1985). For the below stated reasons, we affirm the Court of Appeals.

Middleton argues that the Court of Appeals erred by reversing the portion of the ALJ's opinion and order that enhanced her award by the three multiplier. We disagree. As used in KRS 342.730(1)(c)1, the phrase "the type of work that the employee performed at the time of injury" refers to the specific jobs or tasks that the individual performed, rather than the title of the position or the job classification. *Ford Motor Company v. Forman,* 142 S.W.3d 141, 145 (Ky. 2004). Thus, a return to the same job title is not dispositive in deciding to apply the three multiplier. *Id.*

In this matter, the uncontradicted evidence is that Middleton has returned, not only to the same job classification, but also performs the exact same tasks that she did before her work-related injury. While Middleton might have difficulty performing those tasks, she admits that she can complete them

7

at this time. Thus, the Court of Appeals was correct in holding that KRS 342.730(1)(c)1 does not apply.

Middleton counters the fact that she is able to perform the same tasks now as she did before the work-related injury by stating that she is exceeding the restrictions placed upon her by her physicians. However, it is unclear that Middleton must significantly exceed any restriction placed upon her to perform her job. Additionally, while Middleton takes medications for her pain, she does not have to take them in excess to perform her job. *See Fawbush,* 103 S.W.3d at 8 (holding that the claimant may be eligible to have his award enhanced by the three multiplier because he had to take higher doses of narcotics than prescribed to be able to perform his job). Thus, the ALJ erred by finding that KRS 342.730(1)(c)1 could apply to Middleton's award.

For the above stated reasons, we affirm the decision of the Court of Appeals.

All sitting. Minton, C.J.; Abramson, Cunningham, Noble, and Venters, JJ., concur. Barber, J., dissents by separate opinion in which Keller, J., joins.

BARBER, J., DISSENTING: Respectfully, I dissent. Middleton has worked for Lowe's as an exterior project specialist for more than twelve years. On January 9, 2012, she sustained a work-related injury resulting in a ruptured disc at C6-7. After undergoing a cervical fusion, Middleton returned to work at Lowe's at the same or greater wage.

The ALJ properly analyzed the case under *Fawbush v. Gwinn,* 103 S.W.3d 5 (Ky. 2003) and *Adkins v. Pike County Board of Education,* 141 S.W.3d

8

387 (Ky. App. 2004), in awarding the three multiplier under KRS 342.730(1)(c)1. In *Fawbush,* this Court held that where KRS 342.730(1)(c)1 and KRS 342.730(1)(c)2[1] could both apply, the ALJ has the authority to determine which "is more appropriate on the facts. If the evidence indicates that a worker is unlikely to be able to continue earning a wage that equals or exceeds the wage at the time of injury for the indefinite future, the application of paragraph (c)1 is appropriate." *Id.* at 12. *Adkins* holds that:

> If every claimant's current job was certain to continue until retirement and to remain at the same or greater wage, then determining that a claimant could continue to perform that current job would be the same as determining that he could continue to earn a wage that equals or exceeds his pre-injury wages. However, jobs in Kentucky, an employment-at-will state, can and do discontinue at times for various reasons, and wages may or may not remain the same upon the acquisition of a new job. Thus, in determining whether a claimant can continue to earn

---

[1] KRS 342.730(1)(c) provides in relevant part:

> 1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or

> 2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

an equal or greater wage, the ALJ must consider a broad range of factors, only one of which is the ability to perform the current job. Therefore, we remand this case to the ALJ for a finding of fact as to Adkins' ability to earn a wage that equals or exceeds his wage at the time of the injury for the indefinite future. If it is unlikely that Adkins is able to earn such a wage indefinitely, then application of Section c(1) is appropriate.

*Id.* at 390.

The ALJ's January 15, 2014, Opinion and Award sets forth the basis for his determination to apply the three multiplier:

> [Middleton's] diagnosis being status post C6-7 anterior cervical discectomy and decompression with microsurgical technique and insertion of anterior interbody Synthes cage, arthrodesis local harvested allograft, anterior instrumentation with Synthes plate and screws with persistent neck pain, her 27% permanent impairment rating, her statement that she has daily pain at her job consisting of aching and stabbing and burning pain from the base of her neck radiating up the back of her head posteriorly, muscle spasms between her shoulder blades with burning and pins and needles radiating down her left upper extremity, and pins and needles and numbness into her left long and index fingers, and also the fact that she takes on a daily basis pain medications....

In his January 31, 2014, Opinion and Order on Reconsideration, the ALJ further explained that:

> [Middleton] testified in detail about the physical requirements of her current job. She stated that since returning to work her job has been very physically demanding. She has a limited range of motion in her neck and has difficulty climbing into attics, stooping down and crawling. She also has difficulty moving items weighing 25-30 pounds in and out of her vehicle.

10

[2] She stated that her ability to physically perform her job has become progressively more difficult because of having to lift, pull and extend and because of the limitations in her neck and left arm. Those physical activities have become more painful for her. She testified that she has extreme sharp shooting pains that go into the back of her skull and pain down her left arm. After driving, she has a burning sensation going down into her hands and fingers. She has numbness in the fingers of her left hand. She has been attempting to modify her job. She has changed her schedule. At the end of her work day she goes home and takes pain medication and then rests on the couch with a heating pad or ice pad. She takes Motrin, Tylenol and Flexeril to relieve muscle spasms between her shoulder blades. Due to her painful symptoms, she has difficulty sleeping at night. She has to take another Flexeril in the middle of the night for relief. She stated that taking Flexeril makes her sleepy. She stated that since her deposition the physical condition of her neck has gotten worse and the pain has gotten more frequent, causing her to take more pain medication. She testified that she did not think that she would be able to keep up her present pace on the job into the foreseeable future, which will result in her having to take a huge pay cut.

. . .

---

2 Middleton described the materials that she has to unload from her vehicle and take into customers' homes:

> A: I have two large window samples. I have four corner window samples. I have railing systems, aluminum railing systems. I have composite decking material samples that I carry in and out of the home, roofing samples, gutter samples. I'm trying to think if that's all. I think that's all the samples that I carry in my car.
>
> ....
>
> Q: I'm assuming you don't carry samples of regular wooden treating [sic] decking?
> A: I do, yes, sir, and fencing samples, the pickets cut down into smaller sections, so the customer can see the differences.

Middleton also explained that after she carries the materials back to her vehicle, she usually has to rearrange things which involves pulling the materials back out and redistributing them.

> I saw and heard ... Middleton testify at length at the Final Hearing. ... Her testimony about her physical pain and symptoms ring true.
>
> Dr. Owen stated in his report that restrictions should be placed upon Mrs. Middleton's work activities as a result of her neck injury and cervical fusion, being avoidance of activities, such as extending her arm posteriorly and pulling, which seem to exacerbate her neck pain and cause radiating pain. Dr. Goldman stated in his report that Mrs. Middleton's sensory examination in the left upper extremity is consistent with a C7/T1 radiculopathy on the left and that she also has 2 centimeters of atrophy in her left forearm, as compared to her right forearm.

The Board affirmed the award of the three multiplier. The Court of Appeals reversed, holding that "[f]or KRS 342.730(1)(c)1 to apply at all, the claimant must lack the capacity to perform the pre-injury type of employment on the date of the award, not sometime in the future." However, the statute does not speak in terms of lacking capacity on the date of the award. Rather, KRS 342.730(1)(c)1 provides that the three multiplier applies, "[i]f, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury...." Retain is defined as "[t]o hold in possession or under control; to keep and not lose, part with, or dismiss." *Black's Law Dictionary* (10th ed. 2014); *See Merriam–Webster Dictionary OnLine* <http://www.merriam-webster.com/htlm> (visited October 14, 2015) ("to continue to have or use (something)").

The Court of Appeals concluded that Middleton was awarded the triple multiplier "based upon a hypothetical situation" which accommodations and prescription pain medication might prevent, but that this was speculation and

12

did not support an enhancement under KRS 342.730(1)(c)1. I disagree. As the Court of Appeals noted, Middleton did ask about making the samples she has to carry smaller and more lightweight. She also asked about using a laser measuring device instead of a tape measure which would reduce or eliminate her need to crawl. Management thought those were good ideas. Moreover, Middleton explained that by the end of the work day her pain is much greater, that she has extreme muscle spasms, and that it has become more difficult for her to do her job in the past year, because of the pain in her neck and arm. She testified that she goes home, takes Ibuprofen and applies heat, then ice. She also takes Flexeril at bedtime, but cannot take it while she is operating the truck. Most of the time, she takes another Flexeril in the middle of the night.

As the Board explained, Middleton's testimony established that she was struggling to perform her current job which was physically taking its toll. "[H]er testimony supports a conclusion she will soon be unable to perform her current job and also earn a wage which equals or exceeds her wage at the time of the injury. As substantial evidence supports this determination, it cannot be disturbed ...." I agree. As was his prerogative, the ALJ was persuaded by Middleton's testimony. "A worker's testimony is competent evidence of his physical condition and of his ability to perform various activities both before and after being injured." *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000). "The determination of which multiplier to apply is within the discretion of the ALJ, and in the absence of clear error, that decision will not be

13

overturned." *EPI Corp. v. Boling*, No. 2014-SC-000037-WC, 2014 WL 5410318, at *3 (Ky. Oct. 23, 2014). I would reverse the decision of the Court of Appeals.

Keller, J., joins.

COUNSEL FOR APPELLANT,
SONYA LAMB MIDDLETON:

Michael Faulkner Eubanks


COUNSEL FOR APPELLEE,
LOWE'S HOME CENTERS, INC.:

James Burke Cooper


COUNSEL FOR AMICUS CURIAE,
THE KENTUCKY CHAPTER OF AMERICAN
FEDERATION OF LABOR AND CONGRESS
OF INDUSTRIAL ORGANIZATIONS (AFL-CIO):

Jeffery Roberts