RENDERED: JANUARY 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0934-WC

TRACTOR SUPPLY COMPANY.                                      APPELLANT


PETITION FOR REVIEW OF A DECISION
v.            OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-19-89274


SHIRLEY JOHNSON;
HONORABLE JONATHAN
WEATHERBY, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD                                           APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND McNEILL, JUDGES.

CETRULO, JUDGE: An Administrative Law Judge ("ALJ") awarded Shirley

Johnson ("Johnson") temporary total disability ("TTD") benefits, permanent partial

disability ("PPD") benefits, and medical benefits for an injury she sustained while

working in the course of her employment with Tractor Supply Company ("TSC"). TSC filed a petition for reconsideration, which the ALJ overruled. TSC then appealed to the Workers' Compensation Board ("Board"), which affirmed the ALJ's decision. Upon review, we agree with the ALJ and Board.

## FACTUAL AND PROCEDURAL HISTORY

Johnson worked for TSC for three and a half years. There, her work consisted of moderate-to-heavy manual labor as an assistant manager and receiver. In those roles, Johnson helped customers load their vehicles, unloaded pallets of dog food (each pallet containing 40-50 bags), readied inventory for shipment, and scanned items and returned them to shelves. On February 25, 2019, while unloading bags of dog food, Johnson sustained a lower-back injury. In July 2019, Johnson returned to "light duty" work at TSC. In that new capacity, she worked the cash register while sitting on a stool and assisted with rearranging seasonal shelves. At some point thereafter, TSC instructed Johnson to finish using her Family and Medical Leave Act ("FMLA") leave until she was cleared to return to full-duty work. Then in January 2020, TSC terminated Johnson's employment.

At the time of the hearing, Johnson was looking for a new job that did not require any lifting. Johnson testified that she was no longer able to perform the same duties she did before her injury because she still had back pain that radiated

down her hip and legs.  She also testified that she was able to pick up her 15-pound grandson but could only do so for a few minutes at a time.

Through the course of her treatment, Johnson saw three doctors who later offered testimony on her condition:  Dr. Rice, Dr. Primm, and Dr. Madden. Initially, Johnson sought treatment from her primary care physician, who then referred her to Dr. Rice, an orthopedic surgeon.  According to Dr. Rice's treatment notes, he diagnosed Johnson with a lumbar strain, recommended physical therapy, and restricted her to light duty.  Dr. Rice also ordered a lumbar MRI, which he interpreted as showing a small central disc bulge at L5-SI without any significant central foraminal stenosis.  After Johnson continued to complain of low-back pain radiating into both buttocks, Dr. Rice recommended medial branch blocks, which were performed in September of 2019 and in February of 2020.  He also prescribed pain medication and recommended radiofrequency ablations, which were performed in July and October of 2020.  Most recently, Dr. Rice diagnosed Johnson with a lumbar strain and spondylosis in October 2020.  Dr. Rice stated that Johnson complained of radicular pain without objective evidence of radiculopathy.  He further explained that a physician can ascertain radiculopathy by manipulating the spine.

Next, Dr. Primm, another orthopedic surgeon, examined Johnson and reported that he agreed with many of Dr. Rice's findings and recommendations for

treatment. He then noted that he believed Johnson fell under a diagnosis related estimate ("DRE") Lumbar Category I, 0% impairment rating pursuant to the 5th Edition of the American Medical Association, *Guides to the Evaluation of Permanent Impairment* ("AMA Guides").

Finally, Dr. Madden, an osteopathic physician, examined Johnson and reported that he reviewed Dr. Rice's MRI report, which showed "L4-5, L5-S1 HNP with left and central protrusions." He also performed a physical exam and diagnosed Johnson with low-back pain, lumbosacral disc herniations at L4-S1, lumbar degenerative disc disease, and lumbosacral radiculopathy. He then assessed a 13% impairment rating, citing to DRE Lumbar Category III pursuant to the AMA Guides. He further noted that Johnson reached maximum medical improvement ("MMI") on December 13, 2019 and restricted her from lifting over 10 pounds; lower extremity repetitive motion; and bending, twisting, climbing, crouching, stooping, kneeling, and prolonged sitting and standing. Due to these restrictions, he explained, Johnson did not retain the physical capacity to return to the job she was performing at the time of the injury.

In January 2021, the ALJ held a benefit review conference followed by a formal hearing a couple of weeks later. After hearing the evidence, the ALJ found the most recent physician's – Dr. Madden's – testimony was most credible and adopted his determinations that Johnson's impairment rating was 13% and that

Johnson reached MMI on December 13, 2019.  Using these findings, the ALJ

determined Johnson was entitled to the three-multiplier income benefit

enhancement, pursuant to Kentucky Revised Statute (KRS) 342.730(1)(c)1.[1]  The

ALJ awarded Johnson TTD, PPD, and medical benefits for her injury in the March

2021 order.  TSC then filed a petition for reconsideration requesting further

findings of fact.  The ALJ overruled that petition and TSC appealed to the Board.

The Board affirmed the ALJ's decision because it found the ALJ based his findings

on substantial evidence.

TSC claims the ALJ – and the Board, by affirming the ALJ – erred

when it (1) accepted the physician's determination that Johnson's impairment

rating was 13% and (2) enhanced Johnson's income benefits by the three-

multiplier specified in KRS 342.730(1)(c)1.

## STANDARD OF REVIEW

The ALJ is the finder of fact in workers' compensation matters.  *Ira

A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000).  In that regard,

> KRS 342.285(2) provides that the Board shall not
> reweigh the evidence and substitute its judgment for that
> of the ALJ with regard to a question of fact.  The
> standard of review with regard to a judicial appeal of an
> administrative decision is limited to determining
> **whether the decision was erroneous as a matter of
> law**. *American Beauty Homes v. Louisville & Jefferson
> County Planning & Zoning Commission,* Ky., 379

---

[1] KRS 342.730(1)(c)1. is discussed in detail below.

S.W.2d 450, 457 (1964). Where the ALJ determines that a worker has satisfied his burden of proof with regard to a question of fact, **the issue on appeal is whether substantial evidence supported the determination**. *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. *Smyzer v. B.F. Goodrich Chemical Co.*, Ky., 474 S.W.2d 367 (1971). Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal. *McCloud v. Beth-Elkhorn Corp.*, Ky., 514 S.W.2d 46 (1974). The crux of the inquiry on appeal is whether the finding which was made is so unreasonable under the evidence that it must be viewed as erroneous as a matter of law. *Special Fund v. Francis*, *supra*, at 643.

*Id*. (emphasis added).

## ANALYSIS

### I.      Impairment Rating

TSC first argues that Dr. Madden's report did not conform to the AMA Guides' standards when assessing Johnson's impairment rating. Specifically, TSC claims that Dr. Madden's examination of Johnson – which consisted of the palpation of her spine, review of her MRI, and analysis of her deep tendon reflexes – did not meet the burden to establish "radiculopathy" under the AMA Guides and therefore did not justify the 13% impairment rating. TSC further claims that Dr. Madden's findings were inaccurate and did not adhere to the AMA Guides because, it claims, they contradicted Dr. Rice's and Dr. Primm's findings.

-6-

However, Kentucky caselaw provides clear guidance on how a physician must use the AMA Guides:

> Under our law, the AMA Guides are an integral tool for assessing a claimant's disability rating and monetary award. So to be useful for the fact-finder, a physician's opinion must be *grounded* in the AMA Guides. . . .
>
> To be *grounded* in the *Guides* is not to require a *strict adherence* to the *Guides*, but rather a *general conformity* with them. We also note that the Court of Appeals in [*Jones v.*] *Brasch-Barry* [*General Contractors*, 189 S.W.3d 149, 153 (Ky. App. 2006)] seemingly also did not require strict adherence to the *Guides*: An ALJ cannot choose to give credence to an opinion of a physician assigning an impairment rating that is not *based upon* the AMA Guides. An opinion that is *based upon* the *Guides* is different from one that *strictly adheres to* the *Guides*.

*Plumley v. Kroger, Inc.*, 557 S.W.3d 905, 912-13 (Ky. 2018) (internal quotation marks and citations omitted).

We agree with the Board that the ALJ considered substantial evidence when adopting Dr. Madden's impairment rating and determining it was based on the AMA Guides:

> The ALJ found Johnson's testimony regarding her symptoms and pain credible and consistent with Dr. Madden's opinions. The ALJ noted Dr. Madden diagnosed low back pain, lumbosacral disc herniations at L4-SI, lumbar degenerative disc disease, and lumbosacral radiculopathy, and assessed a 13% impairment rating. The ALJ found Dr. Madden's assessment of impairment most credible, noting it was made pursuant to the AMA

-7-

Guides. He was persuaded by Dr. Madden's testimony that his opinion was based upon the objective medical evidence available and Johnson's demonstrated symptoms. Therefore, the ALJ found, "the findings of Dr. Madden were credibly rendered in accordance with the AMA Guides and constitute objective medical findings upon which a finding of work-related injury may be properly based."

Board opinion, p. 7.

This Court has stated that "if the physicians in a case genuinely express medically sound, but differing, opinions as to the severity of a claimant's injury, the ALJ has the discretion to choose which physician's opinion to believe" so long as the opinion is based on the AMA Guides. *Brasch-Barry*, 189 S.W.3d at 153. Here, the ALJ analyzed Dr. Primm's and Dr. Madden's examination reports and opinions concerning Johnson's impairment rating.[2] The ALJ, using his discretion, determined Dr. Madden's opinion was more credible. He outlined his reasons for so concluding, one of which was that only Dr. Madden provided sworn deposition testimony. Further, Dr. Madden's deposition testimony showed his methodology for determining Johnson's impairment rating complied with the AMA Guides. Moreover, there is no opinion from any other medical expert that Dr. Madden's impairment rating was not in compliance with the AMA Guides. Therefore, there is substantial evidence Dr. Madden's application of the AMA

---

[2] Dr. Rice did not submit an opinion concerning Johnson's impairment rating.

Guides was based on medical evidence and properly supports the impairment rating.

## II.    Multiplier

Next, TSC argues the ALJ erred when it adopted the three-multiplier, pursuant to KRS 342.730(1)(c)1.  Under KRS 342.730(1)(c)1.:

> If, due to an injury, an employee does not retain the physical capacity to return to **the type of work that the employee performed at the time of injury**, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection . . . .

(Emphasis added.)

The statute makes clear that the ALJ must consider the type of work the employee performed at the time of injury.  TSC argues, however, that "the spirit by which the statute was enacted" calls for "more sophisticated definition of 'type of work.'"  We disagree.

TSC claims that we should look to Johnson's broader job title of "manager" to determine whether she could return to the type of work she performed.  TSC further suggests we look to the work she conducted prior to her job with TSC, more than three years before the injury.  The statute and relevant caselaw, however, require us to look to the "type of work that the employee performed at the time of injury[.]"  KRS 342.730(1)(c)1.  *See also Plumley*, 557 S.W.3d at 917 (this Court looked to whether the employee "retain[ed] the physical

-9-

capacity to return to the type of work that [he] performed at the time of injury . . . .").

This Court has clarified the same issue: "To determine if an injured employee is capable of returning to the type of work performed at the time of injury, an ALJ must consider whether the employee is capable of performing 'the actual jobs that the individual performed.'" *Trane Com. Sys. v. Tipton*, 481 S.W.3d 800, 804 (Ky. 2016) (quoting *Ford Motor Co. v. Forman*, 142 S.W.3d 141, 145 (Ky. 2004)).

In *Forman*, the claimant worked as an assembler pre-injury. After she recovered, she returned to work as an assembler, but was not able to perform all the tasks in that classification. Unlike here, the ALJ did not apply the three-multiplier to the claimant's award because she returned to the same job classification that she had pre-injury. However, the Board reversed, finding that the ALJ erred by using the claimant's job classification as the standard for refusing to enhance the award. The Court of Appeals affirmed the Board and found that the ALJ must analyze all the evidence to determine what jobs the claimant performed at the time of her injury and then find whether she retains the physical capacity to return to those jobs. *Id.* If she did not retain the physical capacity to return to those jobs, even if she returned to the same job classification, she would be entitled to the three-multiplier. *Id.*

Pre-injury and before Johnson's move to "light duty" work, she regularly lifted moderate-to-heavy inventory and unloaded pallets. After the injury, Johnson was no longer able to perform those tasks and instead sat at the cash register, occasionally rearranging seasonal shelves before being terminated. Even while on "light duty," TSC provided assistance to Johnson to complete her tasks. Under Dr. Madden's direction, Johnson could not (and did not) return to the same type of work she was performing prior to the injury.

This Court confirmed that KRS 342.730(1)(c)1. refers to the specific acts an employee performed prior to an injury, not a broad reference to a job title they once held. *Forman*, 142 S.W.3d 141. The ALJ's finding that Johnson was entitled to the three-multiplier was not erroneous and is supported by substantial evidence.

## CONCLUSION

For these reasons, we AFFIRM the Board.


ALL CONCUR.


BRIEF FOR APPELLANT:

Walter E. Harding
Louisville, Kentucky

BRIEF FOR APPELLEE SHIRLEY
JOHNSON:

Dan Scott
Lexington, Kentucky

-11-