RENDERED: AUGUST 24, 2006
TO BE PUBLISHED

# Supreme Court of Kentucky



2005-SC-0836-WC

ARNOLD ADAMS                                                       APPELLANT

                      APPEAL FROM COURT OF APPEALS
V.                    2004-CA-2177-WC & 2004-CA-2387-WC
                    WORKERS' COMPENSATION NO. 03-96193

NHC HEALTHCARE;
HON. GRANT ROARK,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                           APPELLEES

## OPINION OF THE COURT

## AFFIRMING

An Administrative Law Judge (ALJ) refused to consider post-hearing evidence regarding the claimant's social security disability award and determined that he was only partially disabled. Noting that the facts complied with both KRS 342.730(1)(c)1 and 2, the ALJ determined that the claimant could return immediately to other regular employment at the same or a greater wage and awarded benefits under KRS 342.730(1)(c)2. Although the Workers' Compensation Board affirmed on the first two issues and found no error in the corrected order denying reconsideration, it determined that the evidence and Fawbush v. Gwinn, 103 S.W.3d 5 (Ky. 2003), compelled an award under KRS 342.730(1)(c)1. The Court of Appeals reversed on that issue but affirmed otherwise.

The claimant raises four arguments. He asserts that 803 KAR 25:010, § 14(2) entitled him to introduce evidence regarding his social security disability award after proof time closed; that overwhelming evidence compelled the ALJ to find him totally disabled; that the corrected order on his petition for reconsideration violated KRS 342.125; and that the ALJ misapplied Fawbush v. Gwinn, supra, when finding that he could work as a med tech despite ordering the employer to pay for a walker. Having concluded that nothing required the ALJ to consider evidence submitted after proof time closed; that substantial evidence supported the finding of partial disability; that the entry of a corrected order denying consideration did not violate KRS 342.125 or the regulations; and that substantial evidence supported the application of KRS 342.730(1)(c)2, we affirm.

The claimant was born in 1967, graduated from high school, and earned a medical technology certificate. He had worked primarily in the health care field at several different facilities. His application indicated that he had worked as a med tech at Hilltop and New Dawson Springs nursing homes from 1989 to 1996. In 1996, he began working for NHC Healthcare as a nursing assistant. NHC was also a nursing home. When deposed, the claimant testified that his duties as a med tech had involved giving medications. He changed jobs because NHC offered better benefits. His duties as a nursing assistant for NHC included helping nurses with their duties, wheeling patients from place to place and bathing, dressing, grooming, feeding, and lifting patients. They involved a heavier physical burden than being a med tech.

The claimant testified that he injured his back on April 16, 2002, while moving a patient. No one else was present. Although he reported the incident, his supervisor failed to complete an accident report. The claimant testified that he finished his shift

-2-

and saw Dr. James (his family physician) the next day. Dr. James later referred him to Dr. Davies, a neurosurgeon. The claimant testified that he missed no work and performed his usual duties until the end of August, 2002, when his injury worsened.

The claimant stated that he had suffered two prior injuries to his low back and wrist while working for NHC. He had undergone surgery due to the injury at issue, but his pain continued and he thought his condition was worse. At present, he experienced pain and numbness in his low back that radiated into his left leg. He could not sit for more than 15-20 minutes, bend over to pick things up, walk without a cane for more than 10-20 minutes at a time, or engage in more than limited physical activity.

Based on MRI scans that revealed neuroforamenal stenosis and a small disc herniation at L5-S1, Dr. Davies diagnosed lumbar disc displacement and radiculopathy for which he performed surgery. He later assigned a 13% impairment and restricted the claimant from lifting more than five pounds and from bending, twisting, or prolonged sitting. He thought the claimant could return to very sedentary work that allowed him to rest frequently and should not be on his feet for extended periods of time.

The claimant received post-surgical pain management treatment from Dr. Love until September, 2003. He walked with a cane at the time and continually complained of low back pain and increased leg pain. Several epidural injections did not relieve it.

Dr. Travis, a neurosurgeon, performed an independent medical evaluation for the employer in February, 2004. He performed a physical examination and also reviewed medical records, including diagnostic imaging of the claimant's spine dating to 1992. Dr. Travis reported that there were no objective findings on neurological evaluation that related to the disc herniation and that there was normal postoperative fibrosis. Post-operative MRI revealed no evidence of compromise to the left S1 nerve

root and no evidence of a recurrent or residual disc fragment. His only concern was "a mild suggestion of questionable atrophy in the left lower extremity," which he thought could be compatible with EMG/NCV testing that suggested "a possible mild generalized neuropathy." He noted, however, that a herniated disc at L5-S1 on the left would not cause atrophy in the thigh. He also noted that the claimant overtly magnified his symptoms, exhibiting five out of a possible five positive Waddell findings. Dr. Travis assigned a 13% impairment to the April 16, 2002, injury by combining a 10% impairment under DRE lumbar category III and a 3% impairment for atrophy to the left thigh and calf. In his opinion, the claimant could lift 35-50 pounds and return to at least medium level work.

Attempting to prove a pre-existing active disability, the employer submitted an October 25, 2000, radiology report from Dr. Guyette. Among other things, it noted mild degenerative changes and disc narrowing at L5-S1. Records from Dr. James indicated that he treated the claimant twice in October, 2000, for an acute lumbosacral strain.

When the claim was heard, Dr. James continued to treat the claimant for back complaints. A March, 2004, letter indicated that the claimant suffered from work-related severe low back pain, lumbar degenerative disc disease, and failed back syndrome. He could not rise from a chair without assistance and required an assistive device for ambulating. In Dr. James' opinion, the condition would not improve and probably would worsen.

At the hearing, the claimant testified that a med tech not only dispensed medicine but also performed the duties of a nursing assistant. He stated that he continued to experience low back pain, that his left leg was completely numb, and that Dr. James advised him recently to use a walker rather than a cane. His prescribed

medications included Lortab, Zanaflex, Ativan, Zantac, and Senna-Gen. The claimant stated that pain management sometimes helped but that his other treatments failed to relieve his symptoms. He was waiting for a hearing on his social security disability claim and had received no income since voluntary benefits were terminated. He acknowledged that NHC offered him a sedentary job, spoon-feeding patients, but stated that Dr. Davies "told me no." He spent his days either lying on the couch or in bed and drove a vehicle only when absolutely necessary.

More than a month after the hearing, after the claim had been briefed and submitted for a decision, the claimant filed a motion to submit information regarding his social security claim. The employer objected. Noting that proof time had expired and that Kington v. Zeigler Coal Co., 639 S.W.2d 560 (Ky. App. 1982), made it clear that a favorable social security decision is not binding in a workers' compensation claim, the ALJ refused to consider the evidence.

Turning to the merits of the claim, the ALJ found that no medical evidence attributed any portion of the claimant's impairment to a prior, active condition and that even Dr. Travis attributed impairment to the L5-S1 disc. Finding that the claimant was only partially disabled, the ALJ noted his youth, educational level, and ability to learn and be trained. The ALJ also noted that Dr. Travis thought the claimant's post-surgical neurological status would permit him to work and that the overt symptom magnification Dr. Travis observed undermined the claimant's testimony that he was unable to work. Applying Fawbush v. Gwinn, supra, the ALJ found that the claimant lacked the physical capacity to return to the work he performed at the time of his injury, that he continued to earn the same or a greater wage in that job for some time after his injury, and that he could "return to regular employment at the same or greater wages than the position he

-5-

held at the time of his injury sometime in the immediate future." After noting that the claimant left his job as a med tech at New Dawson Springs for "better benefits" and that the duties involved giving medications, the ALJ found that the average weekly wage for such work probably would be the same as the claimant earned when he was injured and that he could work as a med tech within his medium duty restriction. On that basis, the ALJ awarded partial disability benefits based on a 13% impairment under KRS 342.730(1)(c)2. Stating that nothing in the record established that any medical treatment to date was unreasonable or unnecessary, the ALJ found the treatment to be compensable, including the walker that the claimant purchased with his own funds.

The claimant petitioned for reconsideration complaining that when awarding a partial disability, the ALJ failed to acknowledge that he arrived at the hearing using a walker; that the ALJ erred by failing consider his social security records; that he was entitled to a triple benefit under KRS 342.730(1)(c)1; and that the ALJ failed to address his right to be reimbursed for the walker. Although the ALJ entered an order, the style of which indicated that it denied the petition, the body of the order clearly addressed another worker's claim. Several days later, the ALJ rendered a "corrected order" that addressed the claimant's arguments and found them to be without merit.

The claimant asserts that the ALJ's refusal to consider information regarding his social security disability determination violated 803 KAR 25:010, § 14(2). He argues that he was unable to submit the information earlier because the social security hearing occurred several weeks after his workers' compensation hearing. He argues that the ALJ should have at least considered the "facts, medical records and reports, testimony, and rationale" for the decision regardless of whether it was binding in the workers' compensation proceeding.

-6-

We find no abuse of discretion in the ALJ's refusal to consider the disputed evidence. 803 KAR 25:010, § 14(2) allows a party to file as evidence pertinent material from social security and various public records, but nothing allows a party to file such material outside normal proof time, much less after a claim has been submitted for a decision. Although 803 KAR 25:010, § 15 allows a party to request an extension of proof time up to five days before it expires, the claimant failed to do so. Even had he made a timely request, 803 KAR 25:010, § 14(2) would have prohibited the ALJ from considering any additional medical opinions from his social security record that violated the limitations found in KRS 342.033. Moreover, we fail to see how the rationale for a finding by another agency that was made under the requirements of a different statute would be relevant to his workers' compensation claim.

The claimant's second argument is that the finding of partial disability was unreasonable, particularly because the ALJ ordered the employer to pay for the walker. We disagree.

Contrary to what this argument implies, the ALJ did not determine that the walker was a reasonable and necessary medical expense. The employer contested its liability for medical expenses, asserting that no work-related injury occurred and that a pre-existing, active condition caused any disability. It did not contest any specific medical expense as being unreasonable or unnecessary or offer evidence to that effect. As a result, the ALJ determined only that the employer was liable for medical treatment provided to date, which included the walker. Although the claimant's testimony and that of his treating physicians would have supported a finding of total disability had one been made, Dr. Travis's testimony indicated that the claimant magnified his symptoms and could perform at least medium duty work. His testimony, together with evidence

regarding the claimant's age, educational background, and prior work experience, formed an adequate basis for concluding that the claimant was not totally disabled under the standard described in Ira A. Watson Dept. Store v. Hamilton, 34 S.W.3d 48 (Ky. 2000).

The claimant's third argument is that the corrected order denying his petition for reconsideration did not comply with Chapter 342. He asserts that the order was defective because it failed to withdraw the erroneous order, to refer to KRS 342.125, or to indicate that it was entered on the ALJ's own motion. Therefore, the claim must be remanded to another ALJ for a consideration of the entire record, including the social security determination that he filed before his petition. Again, we disagree.

A clerical error caused the style of the present claim to be joined to the body of an order denying the petition for reconsideration in another claim. As explained in Wheatley v. Bryant Auto Service, 860 S.W.2d 767 (Ky. 1993), KRS 342.125 gave the ALJ authority to correct the erroneous order sua sponte. Although the claimant asserts that the corrected order did not comply with Chapter 342, he has pointed to nothing in Chapter 342 or the regulations that requires an ALJ to use any "magic words" when correcting a clerical error. Nor has he pointed to anything that would require the remedy he suggests. While it would have been more explicit for the ALJ to formally withdraw the erroneous order and then to enter the "CORRECTED ORDER ON PETITION FOR RECONSIDERATION," the corrected order's purpose was clear. It disposed of the claimant's petition; thus, a remand for that purpose is unnecessary.

The claimant's final argument concerns the decision in Fawbush v. Gwinn, supra, which determined that when the evidence supports the application of both KRS 342.730(1)(c)1 and 2, the ALJ must choose the subsection that is more appropriate

-8-

under the facts. The case involved an individual whose entire work history involved manual labor. As of the hearing, he earned a greater wage than at the time of his injury but worked outside his restrictions and required more than the prescribed amount of narcotic pain medication to do so. The court found the ALJ's application of KRS 342.730(1)(c)1 to be appropriate because overwhelming evidence indicated that the worker would be unable to continue in the employment indefinitely.

The court explained subsequently in Adkins v. Pike County Board of Education, 141 S.W.3d 387 (Ky. App. 2004), that the Fawbush analysis includes a broad range of factors, only one of which is the ability to perform the current job. The standard for the decision is whether the injury has permanently altered the worker's ability to earn an income. The application of KRS 342.730(1)(c)1 is appropriate if an individual returns to work at the same or a greater wage but is unlikely to be able to continue for the indefinite future to do work from which to earn such a wage.

Unlike the situations in Fawbush, supra, and Adkins, supra, the claimant continued to work as a nursing assistant for several months after his injury but quit before his claim was heard. He asserted that he could no longer work. Having found the claimant to be only partially disabled, the ALJ's task was to determine whether his injury permanently deprived him of the ability to do work in which he could earn a wage that equaled or exceeded his wage when he was injured. The claimant asserts that it did and that he was entitled to a triple benefit under KRS 342.730(1)(c)1.

The claimant points to statements in the ALJ's opinion indicating that he would probably be able to return to work as a med tech. He asserts that the ALJ acknowledged that his medium duty restriction did not permit him to lift patients, even occasionally, but failed to consider his testimony that the duties of a med tech involved

-9-

both dispensing medication and working as a nurse's aide. The ALJ also failed to consider that he used a walker at the hearing and quit working due to pain.

The claimant's argument contains two major flaws. First, his ability to perform his previous job a med tech was but one factor in the Fawbush analysis. Second, his hearing and deposition testimonies regarding the duties of a med tech were inconsistent. When analyzing the extent of disability, the ALJ emphasized the claimant's relative youth, education, and ability to learn and train; Dr. Travis's neurological findings, which indicated that the claimant could perform medium duty work; and the evidence of symptom magnification as well as its effect on the claimant's credibility. The evidence provided a sufficient basis for the ALJ to determine that the claimant would be able to return to regular employment at the same or greater wages than he earned at the time of his injury and that an award under KRS 342.730(1)(c)2 was appropriate.

The decision of the Court of Appeals is affirmed.

All concur.


COUNSEL FOR APPELLANT:

Dick Adams
Thomas Elmus Springer III
Adams Law Firm
28 Court Street
P.O. Box 756
Madisonville, KY 42431


COUNSEL FOR APPELLEE,
NHC HEALTHCARE:

Leeann Bailey
Boehl, Stopher & Graves
410 Broadway
Paducah, KY 42001