# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 29, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0490-WC

BLUEGRASS OAKWOOD, INC.                                            APPELLANT


V.

ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-0423
WORKERS' COMPENSATION BOARD NO. 14-WC-91253


HEATHER MORGAN, HON. JONATHAN R.                          APPELLEES
WEATHERBY, ADMINISTRATIVE LAW
JUDGE AND WORKERS' COMPENSATION
BOARD


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

In workers' compensation cases, an Administrative Law Judge is tasked with making findings of fact, which are binding on reviewing courts so long as the evidence is not so overwhelming as to have compelled a different finding. The issue in this case is whether the facts supported the ALJ's determination that Heather Morgan's workplace injury appropriately entitled her to the two times multiplier of her permanent partial disability benefit under KRS 342.730(1)(c)2. After reviewing the record, we hold that the ALJ erred in applying his facts to the law and not awarding Morgan the three times multiplier under KRS 342.730(1)(c)1. We therefore affirm the Court of Appeals

opinion and remand this matter to the ALJ for calculation of the correct benefit.

## I. BACKGROUND

Appellee, Heather Morgan, has a high school diploma and is halfway through her studies to obtain an associate degree. She is licensed to work as a certified nursing assistant and has no other specialized training. Morgan worked as a residential assistant for Appellant, Bluegrass Oakwood, Inc., earning around $14/hour.

(Bluegrass) provides housing and other services for individuals with physical and intellectual disabilities. In addition to providing direct resident care requiring her to lift residents, transfer residents, push wheelchairs, and otherwise assist residents in carrying out the activities of daily life, Morgan had housecleaning duties. The job description filed in the record by (Bluegrass) requires lifting in excess of fifty pounds as an essential element of the job.

Some of the residents of Bluegrass have behavior disorders and are known to hit, kick, bite, and headbutt their caregivers on occasion. (Bluegrass) assigned Morgan to work with residents with such behavioral issues who became violent with her from time to time. Morgan sustained at least three work-related neck injuries from violent encounters with residents during her tenure at (Bluegrass). During the first of these encounters, a resident significantly larger than Morgan hit her in the back of the neck. An MRI after this injury showed a herniation in Morgan's cervical spine at the C6-C7 level. Later, Morgan was hit in the back of the neck yet again by another resident,

who was also substantially larger than her 112-pound frame. After the second injury, Morgan had a discectomy in which the surgeon removed her herniated disc and replaced it with an artificial vertebra. Morgan returned to work after surgery until she was injured a third time. In this incident, a female resident pulled Morgan's head back by her hair to bite her, jerking Morgan's neck and causing pain and numbness radiating down her arm to her fingers. Morgan has not returned to any form of employment since her third neck injury at Bluegrass.

When Morgan reached maximum medical improvement, Bluegrass stopped paying her temporary total disability benefits and she filed a claim with the Department of Workers' Compensation seeking disability payments.[1] The ALJ found that Morgan was entitled to the "two multiplier" pursuant to Kentucky Revised Statutes (KRS) 342.730(1)(c)2. Ultimately, the Workers' Compensation Board affirmed the ALJ's findings and Morgan appealed to the Court of Appeals. The Court of Appeals reversed, holding the ALJ should have applied the "three multiplier" pursuant to KRS 342.730(1)(c)1. Bluegrass appealed to this Court and we now affirm.

## II. ANALYSIS

When a Kentucky worker is injured, he or she may recover under the workers' compensation system found in KRS Chapter 342. In certain

---

[1] Morgan also raised the issue of additional total temporary disability payments before the ALJ, but that issue was not appealed.

circumstances, an employee's benefit may be tripled or doubled pursuant to KRS 342.730(1)(c). That subsection provides, in pertinent part:

1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or

2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

Herein, the ALJ found that Morgan both could not return to the type of employment that she had at the time of her injury (pursuant to (c)1) *and* that she had returned to work at a greater average weekly wage and could have continued earning this wage into the foreseeable future (pursuant to (c)2). We have held that when both the triple and double multipliers apply, "an ALJ is authorized to determine which provision is more appropriate on the facts." *Fawbush v. Gwinn*, 103 S.W.3d 5, 12 (Ky. 2003). The ALJ found the two multiplier more appropriate in Morgan's case. The applicability of the multiplier is the sole issue before this Court.

4

### A. Standard of Review

In workers' compensation claims, our standards of review differ depending on whether we review questions of law or questions of fact. "As a reviewing court, we are bound neither by an ALJ's decisions on questions of law [n]or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is de novo." *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009).

As to questions of fact, "[t]he ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citing *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985)). Furthermore,

> [a]s factfinder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. KRS 342.285(2) and KRS 342.290 limit administrative and judicial review of an ALJ's decision to determining whether the ALJ "acted without or in excess of his powers;" whether the decision "was procured by fraud;" or whether the decision was erroneous as a matter of law. Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion.

*Abel Verdon Const. v. Rivera*, 348 S.W.3d 749, 753-54 (Ky. 2011) (footnotes omitted).

Under this Court's precedent, "[i]f the fact finder finds against the person with the burden of proof" the "burden on appeal is infinitely greater." S*pecial Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). "It is of no avail in such a

5

case to show that there was some evidence of substance which have justified a finding in [her] favor." *Id.* "[T]he question before the court is whether the evidence was so overwhelming, upon consideration of the entire record, as to have compelled a finding in [her] favor. *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735, 736 (Ky. App. 1984)

**B. The ALJ Erred in Finding That Morgan Could Return to the Same or Greater Average Weekly Wage.**

*1. Restrictions*

In the present case, the ALJ based his findings on the opinions of Drs. Bilkey and El Kalliny and Morgan's testimony. Dr. Bilkey had performed an independent medical evaluation on Morgan's behalf prior to the hearing. Dr. El Kalliny was Morgan's treating neurosurgeon and performed her discectomy and artificial vertebrae placement surgery. Dr. El Kalliny restricted Morgan to lifting, pushing, and pulling no more than twenty pounds and alternating between sitting and standing every thirty minutes. Dr. Bilkey agreed with the limitations put in place by Dr. El Kalliny. Morgan testified a Bluegrass employee told her the company had no jobs in which it could provide those accommodations.

Morgan went back to work without restrictions three times: first, after her injury; then, after neck surgery; and, finally, after her second injury. Before Morgan experienced her third work-related neck trauma, Morgan was making a few more cents on the hour and, therefore, a slightly higher average weekly wage than she had been at the time of her first injury; however, Morgan testified she could not do all the tasks assigned her when she returned to work

6

at any point after her first injury and had to elicit help from her co-workers. Dr. El Kalliny testified he had wanted to impose restrictions on Morgan after her first injury, but she told him her job would not accommodate her and she had to work to support her child. Dr. El Kalliny testified that had he imposed the work restrictions after Morgan's first injury, she would not have sustained the other injuries.

In *Fawbush,* 103 S.W.3d at 12, we held the triple multiplier is applicable when an injured employee

> was able to earn more money than at the time of his injury, his unrebutted testimony indicated that the post-injury work was done out of necessity, was outside his medical restrictions, and was possible only when he took more narcotic pain medication than prescribed. It is apparent, therefore, that he was not likely to be able to maintain the employment indefinitely.

*Id.* The same is true for Morgan. She was able to return to work for short periods of time between her work-related neck trauma and even earned slightly more money during those brief periods of employment. However, like Fawbush, Morgan declined to follow her doctor's recommended restrictions initially, as she knew her employer could not or would not provide the accommodations. Just as Fawbush, Morgan testified she experienced greater levels of pain the more she worked. After her third injury and the imposition of Dr. El Kalliny's restrictions, Morgan never returned to work in any capacity— for Bluegrass or otherwise.

While some of the doctors presented by Bluegrass opined that Morgan could return to her job without restriction, the ALJ made it clear he based his findings on the opinions of Drs. Bilkey and El Kalliny. Specifically, the ALJ

7

found "both doctors have opined that [Morgan] does not retain the ability to return to the same type of work. This opinion has convinced the ALJ." The ALJ also found Morgan "has sustained 28% whole person impairment and that she does not retain the ability to return to the same type of work." However, the ALJ went on to find Morgan, "despite not retaining the ability to return to the same type of work, did return at the same or greater wages and then ultimately had to stop due to the work injuries suffered herein."

### 2. *Proceedings below*

Morgan filed a motion asking the ALJ to reconsider his order regarding the two multiplier. Issuing an order in response to Morgan's motion, the ALJ stated:

> After an additional review of the evidence, the facts found to be credible by the ALJ support the award of the "2" multiplier. The ALJ specifically finds that [Morgan's] credible testimony supports the issuance of the "2" multiplier.
> [Morgan] testified that she returned at the same wages but had to stop working due to the residual effects of her prior injuries. There is no credible evidence of any additional impairment suffered or of more significant restrictions issued that would constitute any change in her condition such that the "3" multiplier could be justified.

Morgan then appealed the ALJ's order to the Workers' Compensation Board, seeking, among other things, for the ALJ to perform the analysis required by *Fawbush*. The Board remanded the case to the ALJ to perform that analysis, stating:

> [i]n the case *sub judice*, the ALJ failed to determine, pursuant to *Fawbush*, whether Morgan is unlikely to be able to continue earning a wage that equals the wage at the time of the injury for the indefinite future based on the factors set forth in *Adams* [*v. NHC Healthcare*,

8

199 S.W.3d 163, 165 (Ky. 2006)]. Thus, enhancement of the award by the two multiplier must be vacated.

The Workers' Compensation Board remanded for the ALJ to perform that analysis and make a determination of whether to enhance the permanent partial disability award by the two multiplier or the three multiplier. On remand, the ALJ acknowledged the three findings an ALJ must make pursuant to *Fawbush*, namely:

> First, the ALJ must determine whether a claimant can return to the type of work performed at the time of the injury. Second, the ALJ must also determine whether the claimant has returned to work at an [average weekly wage] equal to or greater than her pre-injury wage. Third, the ALJ must determine whether the claimant can continue to earn that level of wages for the indefinite future.

The ALJ found Morgan "was ultimately able to return to work in the same job for a significant amount of time and that she stopped working with no increased impairment, restrictions, or disability." The ALJ stated Morgan "said she felt uneasy about returning due to the nature of the work in that particular location." The ALJ also found Morgan "did not return due to her fear of the working conditions in that particular location but that she is not prevented from working and earning that same level of income. The ALJ finds that she could provide those same services to another employer or in another location for the same employer." Based on those findings, the ALJ determined the "two" multiplier was appropriate, as Morgan had returned to work at an equal or greater average weekly wage.

9

### 3. *No evidence exists Morgan could make the same or greater average weekly wage.*

Because the question before us represents a factual finding, we must determine if the ALJ based his findings on substantial evidence. *See Whittaker*, 998 S.W.2d at 481. Here, the ALJ failed to identify *any* evidence in the record showing a job Morgan could work within her accommodations earning the same or greater wages. In fact, the ALJ stated he based his findings on Morgan's testimony and the medical opinions of Drs. Bilkey and El Kalliny. Morgan testified there were no positions available at Bluegrass within her restrictions—much less jobs earning the same or greater average weekly wage. The only specialized training Morgan had was as a certified nursing assistant and she was a year shy of obtaining her associate degree. While the ALJ blanketly states Morgan could obtain another position doing the same work in a different location, he does not relate this back to Morgan's work restrictions or point to any evidence of the existence of jobs.

The ALJ found Morgan was unable to return to her previous type of work—and that finding is undisputed by the evidence relied upon by the ALJ. However, there is *no* evidence of any jobs which are available within her restrictions or the wages of such jobs. This Court has made it clear "[i]f the evidence indicates that a worker is unlikely to be able to continue earning a wage that equals or exceeds the wage at the time of injury for the indefinite future, the application of paragraph (c)1 is appropriate." *Fawbush*, 103 S.W.3d at 12. As such, the three-multiplier pursuant to KRS 342.730(1)(c)1 is applicable to Morgan's claim.

10

This case is similar to our recent decision in *Bryant v. Jessamine Car Care*, 2018-SC-000265-WC, 2019 WL 1173003, at *6 (Ky. Feb. 14, 2019). As in the present case, the ALJ in *Bryant* "specifically made a finding that Bryant lacked the 'physical capacity to return to his job . . ..'" *Id.* Further, in both cases, "[t]his finding is supported by [the workers'] testimony, as well as the testimony of his [and her] treating doctors." *Id.* In that case, we held the ALJ "erred . . . in attempting to determine Bryant's *potential* ability to work . . . for the same or greater wages." *Id.* In both Morgan's case and Bryant's, "there was *no evidence* in the record of what [a person employed in another position] may make." *Id.*

In summary, the ALJ found that Morgan lacked the physical capacity to perform the type of work she was doing in her job at Bluegrass, but then speculated that she *could* work in some other type of position for an equal or greater wage to support the application of the two multiplier award. There is no evidence to support such a speculation, therefore we find that there is compelling evidence to reverse as no reasonable person could justify the application of the two multiplier under the facts. The three multiplier must be applied since Morgan cannot return to her preinjury employment and there is no evidence that she could continue to make her post-injury wages with her medical accommodation.

### III. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals and remand this matter to the ALJ for recalculation of Morgan's benefits using the three multiplier.

Minton, C.J.; Conley, Hughes, Keller, Lambert and VanMeter, J.J.; sitting. Nickell, J. not sitting.  All Concur.


COUNSEL FOR APPELLANT:

Robert Frank Ferreri
Christopher Mills Mayer
Ferreri Partners, PLLC


COUNSEL FOR APPELLEE, HEATHER MORGAN:

Mark Douglas Knight


COUNSEL FOR APPELLEE, JONATHAN R. WEATHERBY:

Jonathan Robert Weatherby, Jr.
Administrative Law Judge


COUNSEL FOR APPELLEE, WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey