RENDERED: JUNE 24, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0340-WC

MICHAEL SKIDMORE                                          APPELLANT


                     PETITION FOR REVIEW OF A DECISION
v.                  OF THE WORKERS' COMPENSATION BOARD
                           ACTION NO. WC-18-90163


TKC HOLDINGS/KEEFE GROUP;
HONORABLE RICHARD E. NEAL,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE: The Appellant, Michael Skidmore, has petitioned this Court for

review of the February 14, 2020 opinion rendered by the Kentucky Workers'

Compensation Board ("the Board"). Therein, the Board affirmed the opinion,

order, and award rendered by the Administrative Law Judge ("ALJ") on July 11,

2019. On appeal, Skidmore asserts that the Board erred in: (1) affirming the ALJ's conclusion that he was not permanently totally disabled; and (2) in applying Kentucky Revised Statutes ("KRS") 342.730(4), which terminates benefits "as of the date upon which the employee reaches the age of seventy (70), or four (4) years after the employee's injury or last exposure, whichever last occurs."[1] Having reviewed the record and being otherwise sufficiently advised, we affirm.

## I. BACKGROUND

Skidmore was born in April 1952; at the time of events giving rise to the instant workers' compensation claim, he was just shy of his sixty-seventh birthday. Skidmore has a long and varied work history. After graduating from high school, he attended community college studying auto technology for a year and a half but did not complete the program. He then attended and graduated from the police academy and spent the next ten years working as a police officer. Afterwards, he worked in retail and sales management at a number of different

---

[1] On our own motion, by order entered August 31, 2020, the Court placed this appeal in abeyance pending the finality of certain cases then-pending before the Kentucky Supreme Court regarding the constitutionality of the same provision of KRS 342.730 Skidmore challenges in this appeal. On August 26, 2021, the Kentucky Supreme Court upheld the constitutionality of KRS 342.730(4) in two separate appeals, *Cates v. Kroger*, 627 S.W.3d 864 (Ky. 2021), and *Dowell v. Matthews Contracting*, 627 S.W.3d 890 (Ky. 2021). Thereafter, by order entered September 30, 2021, this Court returned this appeal to the Court's active docket and allowed the parties an additional period of time to file supplemental briefs. Supplemental briefing having now been completed, this appeal is ripe for a decision on the merits.

establishments including Dollar General and Meijer. He also worked as a mechanic at a lawn and garden store.

Skidmore began working for the Appellee, TKC Holdings/Keefe Group ("TKC"), a company which provides staffing and other services for prison commissaries, in September 2012. TKC assigned Skidmore to the commissary at North Point Training Center, a medium-security prison located in Boyle County. Skidmore's job duties in the commissary at North Point included stocking product, picking orders, and selling commissary items to prisoners. Skidmore's work in the commissary occasionally required him to lift items weighing upwards of fifty pounds, but generally the items he handled did not weigh over thirty pounds. He was required to do some bending, crouching, and kneeling.

On March 8, 2018, while in the commissary, Skidmore tripped on a piece of cardboard and fell forward catching his right arm on some shelving in the process. He landed on his knees and left hand with his right arm still caught in the shelving. Skidmore felt immediate pain and gave notice to his supervisor. After his fall, Skidmore experienced a gradual tightening in his shoulder, arm, neck and back; he sought medical treatment the following day from Concentra Medical Center where he was treated by Kimberly Jones, a certified physician's assistant ("PA-C"). PA-C Jones diagnosed Skidmore with an acute neck muscle strain, a lumbosacral strain, and sciatica of his left side associated with disorder of

lumbosacral spine. She prescribed a muscle relaxer, referred Skidmore to physical therapy, and recommended light duty restrictions. Skidmore continued to treat with Concentra for the next several weeks. He made minimal progress with physical therapy and continued to complain of low back pain prompting a referral to Dr. Travis Hunt, an orthopedist.

Skidmore first saw Dr. Hunt on or about April 30, 2018. In conjunction with his examination, Dr. Hunt reviewed Skidmore's recent MRI and medical records. Dr. Hunt diagnosed a L3 vertical body fracture. Dr. Hunt did not believe surgery was indicated and was optimistic the fracture would heal over time. He took Skidmore off work effective May 1, 2018. Skidmore continued to treat with Dr. Hunt for the next several months. Dr. Hunt prescribed additional physical therapy in July 2018 after Skidmore indicated that his low back pain had not abated with rest.[2] He directed Skidmore to remain off work.

Skidmore next saw Dr. Hunt on August 27, 2018, at which time Skidmore indicated that he was still experiencing low back pain. Dr. Hunt opined that Skidmore had reached maximum medical improvement ("MMI") as of that date and that other than steroid injections, which Skidmore was against, there was little more that he could do for him medically. An examination showed involuntary muscle guarding, and pursuant to the American Medical Association's

---

[2] This physical therapy was not approved by TKC's workers' compensation carrier.

*Guides to the Evaluation of Permanent Impairment, 5th Edition* ("*AMA Guides*"), Dr. Hunt placed Skidmore in Lumbar Category II and assigned an 8% whole person impairment. Dr. Hunt recommended that Skidmore retire from TKC to allow his back to rest.

Skidmore elected not to retire. However, TKC terminated Skidmore effective October 1, 2018, because it did not have any permanent positions within Skidmore's work restrictions. Skidmore then applied for and received unemployment benefits. He began looking for other employment within his restrictions. He was still unemployed when he testified before the ALJ at the final hearing on May 14, 2019.

On December 5, 2018, Skidmore filed a Form 101 Application for Resolution of Injury Claim with the Kentucky Department of Workers' Claims alleging injuries to his lower back and neck as a result of his fall on March 8, 2018. Skidmore's claim was assigned to an ALJ. Following discovery, the ALJ conducted a benefit review conference on April 10, 2019, followed by a final evidentiary hearing on May 14, 2019, at which Skidmore was the only witness.

Medical records filed during discovery revealed that Skidmore had suffered numerous injuries prior to his March 2018 fall at North Point. Of relevance, Skidmore suffered a low back injury in 2015 when he slipped and fell. He had physical therapy following this injury. He fell and injured his back and

knee in 2016. These injuries also required physical therapy. Skidmore injured his neck and lower back in a motor vehicle accident in 2016. An x-ray taken at that time showed multi-level disc disease of the lumbar spine.

In support of his claim, Skidmore filed an Independent Medical Examination report ("IME") from Dr. James Owen. Skidmore presented to Dr. Owen for examination on November 14, 2018. Dr. Owen diagnosed persistent lumbar pain associated with a markedly positive multi-level MRI which showed a significant moderate to severe foraminal narrowing at L3, and an effacement of the L5 nerve root at L5-S1 with multiple other levels involved. While Dr. Owen acknowledged that Skidmore had pre-existing spinal degeneration, he did not believe that it was actively symptomatic prior to the fall. Dr. Owen concluded that the fall brought this pre-existing condition into a disabling reality.

Based on range of motion, Dr. Owen opined that Skidmore suffered a 16% whole person impairment due to the back injury he sustained in the 2018 fall. He did not assign any impairment for Skidmore's neck injury. Dr. Owen did not believe Skidmore could return to his prior job duties and recommended restrictions of no lifting over twenty pounds and that Skidmore avoid recurrent bending, squatting, stooping, walking more than fifteen minutes, standing more than fifteen minutes, or sitting more than an hour without being able to move.

Skidmore testified by deposition and as part of the final evidentiary hearing. While Skidmore admitted prior injuries to his back, he disclaimed that he was experiencing any back problems immediately prior to his March 2018 fall. He stated that prior to his fall he was not under any work restrictions and was able to perform all his job duties. Despite receiving medical treatment after his fall, Skidmore continues to struggle with low back pain. He testified that the pain radiates from his low back down into his left leg. Using a ten-point scale with ten being the most pain, Skidmore described his general pain level to be a three or a four. However, he indicated that sometimes his level is a ten. He can only sit for about an hour before experiencing pain and discomfort, and his pain and discomfort cause him frequent insomnia. He spends most of his time at home sitting in a recliner. Even though Skidmore was still looking for work at the time of the final hearing, he did not believe that his prospects were good due to his age, restrictions, pain and discomfort levels, and prior work history.

Among the issues in dispute, the ALJ was tasked with determining whether Skidmore was entitled to permanent benefits under KRS 342.730, and, if so, whether he qualified as totally disabled. The ALJ first determined that Skidmore suffered a permanent injury as a result of his March 2018 fall entitling him to benefits based on the 16% whole person impairment rating assessed by Dr. Owen. Once again relying on Dr. Owen, the ALJ found that Skidmore was entitled

to have his benefits enhanced by the 3.6 multiplier because he lacked the physical capacity to return to his prior job duties and was earning a lesser wage. However, the ALJ rejected Skidmore's claim that he was totally and permanently disabled, reasoning as follows:

> The ALJ finds that [Skidmore] has the capacity to perform work on a regular and sustained basis in a competitive economy, and is not totally disabled from work. [Skidmore] presented himself as an articulate and likable individual at the hearing. He has a twelfth grade education and almost two years of college. [Skidmore] has significant work experience performing supervisory and management type job duties, and these skills will transfer into other jobs well within the restrictions recommended by Dr. Owen. Further, the restrictions recommended by Dr. Owen, which have been adopted by the ALJ as most persuasive, are not too onerous, and the ALJ believes that he has the intellect and transferable skills that will allow his [sic] to perform a variety of jobs within these restriction. As such, the ALJ finds that [Skidmore] is not entitled to an award of total disability[.]

(Record ("R.") at 244.)

Consistent with his findings of fact and conclusions of law, the ALJ awarded Skidmore temporary total disability benefits, past and future medical expenses, and permanent partial disability benefits at the rate of $216.52 per week commencing on March 8, 2018, and terminating on April 12, 2022, Skidmore's seventieth birthday.

Skidmore filed a petition for reconsideration with the ALJ arguing in part that the ALJ failed to take his advanced age into account when deciding he was not totally disabled. The ALJ overruled the petition noting that "the ALJ continues to believe that the [Skidmore] has the capacity to perform work on a regular and sustained basis in a competitive economy and is not totally disabled from work, even when factoring his age into the equation." (R. at 261.)

Skidmore appealed to the Board, arguing the ALJ erred in awarding him only partial permanent benefits where the evidence compelled a finding that he was totally disabled. He also argued that retroactive application of the amended version of KRS 342.730(4), which terminates benefits at age seventy, was unconstitutional. The Board affirmed the ALJ's award. With respect to the first issue, the Board held that the ALJ's conclusion that Skidmore was not entitled to permanent total benefits was in conformity with the law and the evidence did not compel a contrary decision. As to the second issue, the Board noted that it lacked the authority to declare KRS 342.730(4) unconstitutional.

This appeal followed.

## II. STANDARD OF REVIEW

Pursuant to KRS 342.285, the ALJ is the sole finder of fact in workers' compensation claims. Our courts have construed this authority to mean the ALJ has the sole discretion to determine the quality, character, weight,

-9-

credibility and substance of the evidence and to draw reasonable inferences from that evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985); *McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46, 47 (Ky. 1974). Moreover, an ALJ has sole discretion to decide whom and what to believe and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977). On review, neither the Board nor the appellate court can substitute its judgment for that of the ALJ as to the weight of evidence on questions of fact. *Shields v. Pittsburgh & Midway Coal Mining Co.*, 634 S.W.2d 440, 441 (Ky. App. 1982).

If the fact finder finds in favor of the person having the burden of proof, the burden on appeal is only to show that there was some substantial evidence to support the decision. *See Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). However, if the ALJ finds against the party having the burden of proof, the appellant must "show that the ALJ misapplied the law or that the evidence in [his] favor was so overwhelming that it compelled a favorable finding." *Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005).

On appeal, our role "is to correct the Board only where . . . the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *ViWin Tech*

-10-

*Windows & Doors, Inc. v. Ivey*, 621 S.W.3d 153, 157 (Ky. 2021) (quoting *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

### III. ANALYSIS

While this appeal was pending before this Court, the Kentucky Supreme Court rejected the same constitutional challenges to KRS 342.730(4) that Skidmore raises herein. *Cates*, 627 S.W.3d 864; *Dowell*, 627 S.W.3d 890. Following the finality of these opinions, we ordered the parties to file supplemental briefs. Skidmore's supplemental brief concedes that he no longer has any viable basis to attack the constitutionality of KRS 342.730(4) in light of *Cates* and *Dowell*. Accordingly, further analysis of Skidmore's constitutional claim is unnecessary.

This leaves only Skidmore's claim that the ALJ erred in finding that he is not totally disabled. Skidmore asserts that the ALJ committed an error in assessing the evidence so flagrant as to cause gross injustice where he failed to take into account the effect of Skidmore's significantly advanced age on his ability to find and maintain regular and sustained employment.

Skidmore, as the claimant, had the burden of proving every element of his claim, including his entitlement to total disability benefits. Because the ALJ found against Skidmore on this issue, and because he carried the burden of proof, Skidmore must establish on appeal "that the unfavorable finding was clearly

erroneous because overwhelming evidence compelled a favorable finding, *i.e.*, that no reasonable person could have failed to be persuaded by the favorable evidence." *Kroger v. Ligon*, 338 S.W.3d 269, 273 (Ky. 2011) (citation omitted); *Wilkerson v. Kimball Int'l, Inc.*, 585 S.W.3d 231, 236 (Ky. 2019). "Evidence that would have supported but not compelled a different decision is an inadequate basis for reversal on appeal." *Gaines Gentry Thoroughbreds/Fayette Farms v. Mandujano*, 366 S.W.3d 456, 461 (Ky. 2012) (citation omitted).

"'Permanent total disability' means the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury[.]" KRS 342.0011(11)(c). "'Work' means providing services to another in return for remuneration on a regular and sustained basis in a competitive economy[.]" KRS 342.0011(34).

"[A]n ALJ is required to undertake a five-step analysis in order to determine whether a claimant is totally disabled." *City of Ashland v. Stumbo*, 461 S.W.3d 392, 396 (Ky. 2015). The ALJ must (1) decide whether the claimant suffered a work-related injury; (2) determine the claimant's impairment rating, if any; (3) calculate the claimant's permanent disability rating; (4) determine whether the claimant is unable to perform any type of work; and, finally, (5) decide whether the total disability is the result of the work injury. *Id.* at 396-97.

Skidmore's assertion of error relates to the ALJ's analysis of the fourth step. Step four requires the ALJ to decide whether the claimant is unable to perform any type of work. It requires "an individualized determination of what the worker is and is not able to do after recovering from the work injury." *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48, 51 (Ky. 2000). It "has always been a holistic analysis, incorporating factors which defy easy quantification." *Time Warner Cable, Inc. v. Smith*, 635 S.W.3d 82, 90 (Ky. 2021). "[I]t necessarily includes a consideration of factors such as the worker's post-injury physical, emotional, intellectual, and vocational status and how those factors interact. It also includes a consideration of the likelihood that the particular worker would be able to find work consistently under normal employment conditions." *Hamilton*, 34 S.W.3d at 51. In so doing, the ALJ should consider how "the claimant's age, educational background, and prior work experience" will impact his ability to find work within his physical restrictions. *Adams v. NHC Healthcare*, 199 S.W.3d 163, 168 (Ky. 2006); *Transportation Cabinet v. Poe*, 69 S.W.3d 60, 63 (Ky. 2001). Finally, "[t]he ALJ must set forth, with some specificity, what factors he or she considered and how those factors led to the conclusion that the claimant is [or is not] totally and permanently disabled." *Stumbo*, 461 S.W.3d at 396-97.

Skidmore asserts that the ALJ failed to consider how his advanced age would impact his ability to find work. He asserts that his age, restrictions, and

current pain levels compel a finding that he is permanently disabled. As noted above, however, no one factor is determinative. A review of the ALJ's opinion convinces us that he considered all the relevant factors. Although Skidmore had some physical limitations and was advanced in age, the ALJ concluded that the restrictions Dr. Owen placed on Skidmore were not so onerous that he would be completely unable to work. Additionally, the ALJ noted that Skidmore's education, intellect, significant work experience, and transferable skills would make him a desirable employee. While the evidence Skidmore cites may have supported a finding of permanent total disability, the evidence as a whole does not compel such a finding, and we can discern no error in the ALJ's application of the law to the facts. As the Board correctly stated, "[t]he ALJ acted squarely within his discretion in finding Skidmore is not permanently totally disabled." (R. at 321.)

## IV. CONCLUSION

For the reasons set forth above, we affirm the Kentucky Workers' Compensation Board's February 14, 2020 opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christopher P. Evensen
Louisville, Kentucky

BRIEFS FOR APPELLEE
TKC HOLDINGS/KEEFE GROUP:

Carl M. Brashear
Lexington, Kentucky

RESPONSE BRIEF OF ATTORNEY
GENERAL DANIEL CAMERON:

S. Chad Meredith
Solicitor General

Matthew F. Kuhn
Deputy Solicitor General
Frankfort, Kentucky